decided that the Cain panel, Judge Elrod was on, was correct when it decided that basically the trustees should not be estopped. The court's been struggling with the application of judicial estoppel in a bankruptcy context for, I think, about 15 years now, and it's gone from being an equitable remedy, which is supposed to be flexible, which is supposed to do substantial justice, and which is supposed to promote fairness, to something that really binds the district court and the bankruptcy court's hands. And Judge Bohm was very animated about the fact that he candidly felt that the dissent in the Love case was correct, and that the court needed to revisit its precedents about what was going on, because you have a situation where judicial estoppel is basically a hammer. Every debtor looks like a nail. It's an example. I'm not aware of any debtor that has not been struck. They never make it. The question over the last few years has just been, does it sort of take the trustee thumb along with the nail? And it's understandable why we have that. The jurisprudence has developed in fits and starts going all the way back to 1999 and in Ray Coastal Plains. And that, you look at Coastal Plains and you say, okay, that's why we need judicial estoppel. You've got this bankrupt, does some sort of funny business with a corporate structure, ends up then suing, going to trial, getting a $5.3 million judgment, and everybody's looking back saying, well, come on, this can't be right. And so the court starts with the judicial estoppel, reverses and renders in that case, and correctly so. But what we've had over the years have been a series of decisions that come up in different stages. Sometimes we're dealing with Chapter 7 cases. Sometimes we're dealing with Chapter 13 cases. More importantly, I would suggest, are the differences between the cases that come up before the bankruptcy judge, which is one where we are here, versus the ones that come up in the Rule 56 context, where you're in front of a district court and you've basically, you have a collateral issue that has to be dealt with. And in those situations, and Love was one of those situations, I think the court naturally wants to be a lot harder on debtors, because if Mr. Love had been able to continue in that case, he's basically just a fact question in front of the jury, away from being able to completely get his verdict and to be right where the debtor was in Enright Coastal Plains. Okay, I did all this stuff in bankruptcy. Now I'm going to go in front of the district court, get my jury verdict, and I'll be done. What we have here, though, is a situation where the judges lost all discretion. It's a circular argument. If it was not disclosed, then the inadvertence has to be some sign of malicious intent. But Judge Bohm was really interesting, and I think accurate. He said, and this is in his written decision, he said, and you know what he thinks about these appearance attorneys and these bankruptcy mill attorneys. He said very explicitly, had the appearance attorney spoken up when Mr. Jackson said, I have a patent, and said, hey, let's go back and talk about this for a second. What is this patent? What have you done with it? Judge Bohm says that he has very little doubt, I forget the exact language, but that Mr. Jackson would not have been stopped. And so in that sort of alternative reality where he's just got, I wouldn't even say a better lawyer, I'd say he's got a real lawyer, he's not an evil-hearted, cheating debtor who's trying to subvert the system and all that. He's just a guy who made a mistake. But yet, because the attorney doesn't pick up on it When the trustee met with him, though, they did have a discussion about the patent. Yes, Your Honor. The debtor told him, yeah, I have a patent. It's an old cell phone patent that's worthless. It's out of date. And then, you know, maybe, and just before that, he just negotiated a contract giving him, you know, 40 percent or something of whatever the proceeds were from it. And then shortly thereafter, he's, I mean, the bankruptcy court said, look, this guy lived and breathed this patent. I mean, this was his avenue to get rich. And this was not something that was just out there on the side somewhere that he thought about occasionally. And, you know, I think the bankruptcy court, at that disclosure to the trustee and said that, he just was not making a full disclosure. Well, Your Honor, certainly, if the law is clarified and revised, I think we go back in front of the district court and the district court looks at it. And one can only predict or speculate as to what the district court might do and the bankruptcy court might do the second time around. But the bankruptcy court said, basically, he felt that the hands were tied to begin with. I would just say, what happened was the amendment to the PMA was in February of 2005. The Section 341 meeting with the trustee is December of 2006. So this is about 22 months later. In the interim, there had been this huge falling out between Jackson and SMG Sheedy. And, in fact, Jackson, as we know, was simply unable to pay his deceased grandmother's house. His description to the trustee was actually fairly thorough. He mentioned, according to the trustee's notes, and I can't argue with the trustee, but she's working off her notes from this point, five, six years prior, there's mention in the notes that there had been an agreement with SM, we had tried to monetize it. So the fact that he's disclosing to the trustee, the fact that he's making these comments to the trustee is showing him, as Judge Boehm said, if the patent lawyer had simply gotten up and said, look, can we have the details? Can I show you this? Then we wouldn't be here in the first place. But the situation that the Fifth Circuit has now created is so punitive, and it's a circular question. It's an unanswerable question. You're asking us to change our law? I mean, that's basically, and we're not in a position to do that as a panel. I mean, that's basically the, you concede you lose under our existing law? No, Your Honor. I come awfully close to that, though, Your Honor. I mean, I think there's maybe an argument that could be made that Love is a Chapter 13 case and that this is a Chapter 7 case. But in all candor, Your Honor, what I am mostly asking is that the Court set the groundwork for an appeal for an en banc decision. Okay. And what law would you have us have? What would be your statement of the bankruptcy law should be since you want to go down this path? Well, certainly the definition of lack of inadvertence needs to be changed because going off the Supreme Court's decision in New Hampshire versus Maine, they're talking about the fact that it needs to be an inadvertent error or something like that. The only avenues that the Fifth Circuit has left, they say that if the claims concealment. You know, another significant detail that he left out when he talked to the trustee was he was entitled to $150,000 from this patent regardless of what happened. I wouldn't think that that would be an insignificant amount of money to this debtor. Respectfully, Your Honor, I don't think that Mr. Jackson at that point, having had the falling out with this LLC, this is, as the Court will recall, in between the patent marketing agreement and the trustees meeting, he had been sued by SMG. His own lawyer, who he didn't know was also working both sides of the table, had come down and testified against him. This is an LLC that there's certainly no evidence in the record that it had any type of financial wherewithal to have been able to pay $150,000 if it intended to. But again, Your Honor, it was a mistake. There's no question going back that he should have told all of these things. But under the law, the fact that he had a claim is considered to be in itself a motive for its concealment. I don't understand your argument that the Fifth Circuit precedent is putting the bankruptcy judges in a straitjacket. I mean, couldn't the bankruptcy court, if he believed your client, have found that it was all inadvertent and found that he wasn't? No, Your Honor. I think the bankruptcy court said as much, that he was bound by love. And the key holding of love is that— But because he found him to have all this concealment and not be credible, I mean, didn't he say that even in his recent statements he found credibility problems? Love says that doesn't matter. The panel decision in Love says that the fact that there is a claim that could have inured to him somewhere in the future, that is unequivocally a motive for concealment. The only two ways out, and the court went through it, or I guess you could claim that the debtor was noncomplismentous, or you could have something that is a truly unknown—for instance, a debtor who goes and they go to remodel the kitchen and they find a jar of gold coins behind it. You show that they lack knowledge of the claims so that they could disclose, or you show that they did disclose. That's how you overcome this. And haven't we applied this recently in Chapter 7 in our Westbrook case? Yes, Your Honor. In the Spicer v. Westbrook case, again, you've got a more sophisticated corporate client who's got a key time proceeding going on at the same time that he's doing this. Under Love, I think that the decision in Westbrook is correct. I think it's right. It's what Love says you've got to do. The dissenting judge in Love says that basically whether the debtor knew of his disclosure obligations is irrelevant under the majority opinion, which controls. Whether the debtor knew of his supplementation obligations is irrelevant. Whether the debtor understood that an inchoate claim was a disclosable asset is irrelevant. You know, I read the bankruptcy court's opinion as saying, you know, I really do believe this was a mistake and an oversight by the debtor, but my hands are tied and I've got to find a stopper here. I don't read them as saying that. Well, Your Honor, again, at a certain point Judge Bohm says it would have been just as simple as the bankruptcy as the trust, excuse me, as the appearance attorney having asked him the right questions. He then later on, he has some unkind things to say about Mr. Jackson, but it's absolutely clear, Your Honor, he's talking about the decision in Love and the fact that he says very explicitly, I think the dissent got it right. I think the Fifth Circuit's lost its way. He didn't say those words. He definitely said, I think the dissent got it right, with all due respect to the majority. The goal is to have disclosure. The goal is to get all the assets out there, and he had actual knowledge of his interest in the patent, the PMA and amendment, and the $150,000 conditional payment, didn't he? He had actual knowledge, and the court said And he had actual knowledge of his claims against Sheedy and G.U.C.L. I would disagree with that. I think the court was simply wrong there. I mean, he had knowledge of his dissatisfaction with Sheedy and the Goins firm, but he certainly didn't have knowledge of a claim. He knew the facts, though, didn't he? Come again? He knew the facts. He knew he was dissatisfied, and he knew why he was dissatisfied. Yes, Your Honor, but there's no money out of that. I mean, that could be a grievance. I think that's all you need to know are the facts that would allow you to discover that you have a claim. I think that's all you need to know. But the trustee didn't have a claim necessarily against Goins under Coughler. I mean, the trustee could have he could have filed a grievance, but that's not a claim. That's not an asset. We've gotten to the point in the Ray Fugent's case, which just came out last November, where the court wrote that the fact that the debtor didn't know that the is, according to our precedents, irrelevant. And Judge Dennis, it was called a concurrence, but I would respectfully suggest that it's kind of a little bit of a dissent. He's saying, look, I, you know, I This is why the bankruptcy bar admonishes their clients and why the courts also do so. Do you have anything else? Is there anything? I mean, there are already protections in place. But mistakes are made all the time. And we see in the cases devious stuff. Judge Costa saw briefly the Baker versus Cage case about two years ago, where you've got this lawyer who sets up an LLC and they go with the debtor and they do these straw transactions and they go around the secured creditors. I mean, there are some nefarious critters out there. This is a blue collar working guy who's making nine dollars an hour on the fogging the mirror at best and who made a mistake. I wish we could go back in time. He wishes we could go back in time. But we've the really bad guys and the blue collar guy who makes a mistake have ended up in the same boat. And I respectfully suggest that that's it should be that way.  Thank you. Good morning. May it please the court. Mr. Warner. My name is Allison Miller. I'm here on behalf of Apple's Jack Sheedy and goings under Koffler Crawford and Langdon LLP to whom I'll refer collectively as Guckle. This case is about protecting the integrity of the judicial system of the bankruptcy system. This case is not about protecting Mr. Jackson. And Judge Alrod, as you correctly noted, accepting Mr. Jackson's arguments would mean changing the law of the circuit, which requires that debtors fully and accurately disclose all of their assets when seeking bankruptcy protection from this court. Guckle therefore requests the court to affirm the two thorough prior rulings of the district court and the bankruptcy court. The only quibble I guess they have on the facts is that Jackson didn't have actual knowledge of his claims against Sheedy and Guckle. Do you want to respond to that? I can absolutely respond to that. And I think Mr. Warner glossed over Judge Bohm's opinion where he very thoroughly discussed not only the debtor doesn't have to actually know that he has a claim. The law in ReSwift is that the debtor has to know the facts that give rise to the claim. And Judge Bohm cited multiple instances of the facts that Jackson had that showed that he had a claim against Guckle and SMG. He signed the patent marketing agreement amendment and the assignment in 2005, which later served as the basis for his claims in 2011 in state court. He also was dissatisfied that we have a letter in the record from Mr. Jackson in May of 2005 responding to Mr. Jackson's threats of legal action. Jackson also testified at the lengthy multiple session hearing where Judge Bohm took evidence from multiple witnesses that he was dissatisfied with his lawyers in 2005 and felt like they were working against him in 2005. Therefore, in 2005, before the petition was filed, in 2006, the bankruptcy petition, Jackson knew of facts that gave rise to his claims. They should have been disclosed. Jackson's positions are also inconsistent. Mr. Jackson absolutely had knowledge of the patent. Judge Davis, as you correctly pointed out, Judge Bohm said he was eating, sleeping, breathing the patent. But regardless of whether Jackson adequately disclosed the patent, and he didn't, but assuming that he did, he didn't disclose the claims against Guckle, he didn't disclose the $150,000 contract, he didn't disclose his rights under the patent marketing agreement. Therefore... He disclosed to the trustee. Did he disclose... To the trustee. No. Tell me why what he said was not enough to have gotten the trustee to start asking questions. What he said was not enough? Well, it was... Someone coughed right at the exact part in the recording where he says, I have a patent. So there was a little bit of a question. But assuming he did say, I have a patent, then the trustee takes him aside. She has handwritten notes. He tells her, It's old. It's outdated. I've assigned it away. It's worthless. So he's affirmatively misrepresenting this asset. And with respect to Mr. Warner's statement that, oh, he thought he didn't... He was at odds with SMG at the time. He thought he may never get that $150,000. That's not for Jackson to decide. That's in violations of his duty to the debtor. When he goes to the court asking for protection from the bankruptcy system, he has duties to disclose his assets. And it's not for him to decide. With respect to motive, I disagree with Mr. Warner's characterization of Judge Bohm's ruling. Judge Bohm acknowledged that the love majority says, almost always there's motive when there's a financial benefit. And that's the case here. It is possible that there could be no motive to conceal assets. Say Jackson had a brother who he thought was penniless. He knew he was his brother's only heir. And as it turns out later, and the brother had just died. So he knew maybe he stood to inherit something from his brother. He didn't know that his brother had a million dollars stuffed in his mattress. Maybe that's an instance where he knows he has some sort of asset, but no motive to conceal. How is that different than if he thinks the patent's worthless? He didn't think the patent was worthless. How does it assume, arguendo, that he innocently thought the patent was worthless because he's in all this rigamarole? Even assuming, arguendo, the patent is worthless, he still had a duty to disclose. It was still his patent. It was still his property. Would this circuit have the prerogative to say it should be done on a fact-by-fact, case-by-case basis to determine whether the motive was there if it chose to do so? You have 14 minutes, and he's asking for a change in the law. Would we have the authority to change it to be that where it would be analyzed on case-by-case rather than more automatically assumed? Well, I think it is case-by-case. I don't accept Mr. Warner's position that the law should be changed. Judge Bohm did evaluate this case. He did follow the law. He did look at all of the facts. He assessed the credibility of all the witnesses, and under these facts he determined that judicial estoppel should apply. But it's hard for you to even think of a hypo where the person is innocent that doesn't have the motive because they have knowledge because of the way the rule is working, that it's more of a bright-line rule. Sure. Well, assume that motive is automatic. That's not necessarily a bad thing if it protects the integrity of the judicial system because no knowledge is understandable. I didn't know I had that asset. That's not what the facts here show. That prong of inadvertence is understandable. The motive prong, if it, and I don't think it necessarily is. I think the door is open under Love and under all the cases, Reed and In Reflugence, which Mr. Warner referred to. The door is open for debtors to show I didn't have a motive to conceal, but that's not the facts of this case. And what Mr. Warner is asking for is a change in the law, which, as you stated, this panel cannot do. What would the court as a whole do if it were so inclined? Is there anything barring the court from saying we're no longer going to have this bright-line Love rule, we found it penalizes unsophisticated people, and we're going to instead do a case-by-case analysis in the bankruptcy court? Under the facts of this case, I don't think this court could do that. The facts of this case, even assuming it's a case-by-case basis, and I don't necessarily think there's a bright-line rule that financial benefit equals motive, but in this case there was motive. And there not only was motive, there was actual intent to conceal. Look at 2011 where Mr. Sheedy is trying to talk to Mr. Jackson, and he says, Mr. Jackson, we understand you filed for bankruptcy. The patent's been reissued. We need you to send us that information so we can evaluate what effect this might have on our agreement. And Jackson says, I'm not going to give you that information unless you give me a release and promise me you're not going to use that information against me. He knew, and look at what he told the trustee. When he's eating, sleeping, breathing the patent, he says, it's worthless. He didn't think it was worthless. He knew it was worth millions or possibly a billion dollars as he testified at the hearing. What's your client's interest in this issue? I mean, the bankruptcy court decision really benefits the creditors because, as I understand it, your client's still going to get sued in state court. It will just be the bankruptcy estate who's suing and recovering if there is a recovery. Right. Our client's interest, quite frankly, is at this point upholding Judge Boone's ruling, upholding the judicial system. We're going to defend the claims against ourselves and defend them vigorously. We contest Mr. Jackson's allegations here. But we'll be defending them in the bankruptcy court against the trustee instead of in state court, possibly, depending on what happens. But at this point, Guckel believes the result was fair and it protects the bankruptcy system. And, therefore, Guckel asks this court to affirm the ruling. If this court has no further questions. Thank you very much. I cede the remainder of my time. Thank you. Mr. Boone. Yes, briefly, and I think Judge Costa sort of got it right, the dispute between the two of us has really become a sideshow to the bigger issue. In fact, and we talked about this a little bit before, respectfully, we can't articulate what claim the trustee might have had in 2006. There hadn't been anything paid. There hadn't been anything received. There hadn't been any expenses incurred. What about the conflict of interest? It's not actionable. Is that the main claim that's being raised? It was not actionable in 2006. It's essentially a contingent fee contract. So, if I'm representing somebody on a contingent fee, I end up getting zeroed. My client doesn't have a case against me. I mean, there's no RC versus Burrough or anything like that where I forfeit my fee or anything like that. We go to 2011. Candidly, I don't think the trustee is going to do anything because once Guckel coins disclaimed their 15%, which they've done in open court and on the Court of Appeals, again, there's nothing. What to do? What happens to the $150,000? Because the patent was reissued in 2011, that contingency never came to pass. So that was only theoretically to be payable if the reissue failed. So when the reissue succeeds, that falls by the wayside as well. As Judge Elrod said, it is really, I think, almost impossible to articulate a situation other than, I mean, we heard now, I had my coins behind the wall. We now have the brother who died, but he's actually secretly a millionaire. There has to be a category of cases where you've just got a debtor who makes a mistake. And right now, under the Love framework and under the Fifth Circuit framework, they are just judicially estopped. I mean he's an inventor. He invented something. He came into this bankruptcy with whatever this patent was worth, and we still don't know what it's worth. He's never received a penny. Nobody to this day has ever received a penny from it. But he came into it, and yet somehow because he had a pathetic bankruptcy attorney and an appearance attorney who didn't say anything, what we could get in a situation is if this patent turns out to be worth $5 million, he gets nothing because he had $40,000 in credit card debt, couldn't pay for his own lodging, couldn't pay for a roof over his head, went to a Chapter 7 trustee and Chapter 7 bankruptcy lawyer who ran him through the system. Does he have a malpractice claim against his lawyer? The trustee might have it. I think that would belong candidly to the trustee at this point, and it's terrible. You know, we look at the system and upholding the integrity of the system, you know, I'm all in favor of that, and you go back to some of these cases while we get here because you want to be aware of people who are trying to do sneaky things like in-ray coastal planes. But, you know, when you compare this particular case to the case that I had spoken of, Baker v. Cage, you've got this just nefarious lawyer who you get on the Internet right now, and he's still operating. He's having a good old time. His bar license hasn't been ever so slightly impaired or incurred or anything like that. Some of these terrible things that you see. You don't like the Fifth Circuit case law. Is there another circuit that has what you think is a better rule? I've been so focused on the Fifth Circuit, Your Honor, I would ask if the court would please allow me to file a short letter brief. I don't have an answer for the court. I'm just focused completely on the Fifth Circuit. You know, we might need to tweak that law sometime, but, frankly, I don't think you have a set of sympathetic facts that would get me in and move me to do it. I mean, you've got a guy who had a question on the form. Do you have a patent? He said no. You know, this is not an ignorant guy. But he—at that point, Your Honor, he didn't. Bear in mind that he had assigned—he had assigned— I know, but he still had—he still thought it was going to come home. I mean, he—this was his—he was living a dream. This was it. Well, respectfully, he was living a nightmare. Well, that's what it turned out to be, but he still had hope. And there was a pot at the end of that rainbow, as far as he was concerned. That's what he was telling everybody. Judge Bone could have found facts that would have said that he was innocent if he wanted to, that couldn't he have? Respectfully, Your Honor, I don't think so. I don't know how you could find— He could have found that when he talked to the trustee that that was a full disclosure, right, because that was a big disputed issue. I don't think that gets away from the issue of where love is in terms of the fact that it wasn't disclosed on the schedules. He could have found that he didn't really believe he had any interest in the patent anymore because it had been assigned away and that he was honest and trustworthy and that he didn't have an interest and that he didn't have a motive because he didn't think that there was— I mean, you could—you can still—there is a smidgen of factual finding left if it's not automatic in the law we have. I mean, he could have found the guy just forgot all about that $500,000 and publicly innocent that he didn't disclose it. I mean, anyway, I understand your argument. Thank you very much. We have your case. Okay, we'll call the next case, Smith v. Basic.